**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**       Docket No.: 18-CV-9874 (GBD)
------------------------------------------------------------------X
LA TASHIA GAYLE,

                                              Plaintiff,

                -against-

CHILDREN'S AID COLLEGE PREP CHARTER
SCHOOL, CHILDREN'S AID OF NEW YORK,
CASEY VIER, *In Her Individual and Official
Capacities*, and DEVON JACKSON, In His *Individual
and Official Capacities*,

                                      Defendants.
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO *DEFENDANT DEVON JACKSON'S* MOTION TO DISMISS THE *AMENDED COMPLAINT*

Gregory Calliste, Jr.
Siobhan Klassen
*Attorneys for Plaintiff*
Phillips & Associates, PLLC
45 Broadway, Suite 620
New York, NY 10006
gcalliste@tpglaws.com
sklassen@tpglasw.com

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**..................................................................................................1

**STATEMENT OF RELEVANT FACTS FROM THE AMENDED COMPLAINT**……...……1

    i.   **Sexual Harassment of Plaintiff (and others):** ...................................................................1

    ii.  **Plaintiff Makes a Complaint and No Action Was Taken:**...............................................7

**STANDARD OF REVIEW** ........................................................................................................7

**POINT I.**
**THE COMPLAINT PROPERLY ALLEGES THAT DEFENDANT JACKSON IS LIABLE FOR RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW** .................7

a.       **Plaintiff Engaged In Protected Activity.**..………………………………………………….8

b.       **Defendant Jackson's Actions Constitute Retaliation**…………..………..……………10

**POINT II.**
**PLAINTIFF'S AIDING AND ABETTING CLAIM AGAINST DEFENDANT JACKSON UNDER THE NYCHRL IS PROPER**…………………………………………..……………..11

**CONCLUSION**.………………………………………………………..…………………….13

# TABLE OF AUTHORITIES

**Cases**

Armbruster v. Epstein, 96- CV-1059, 1996 U.S. Dist. LEXIS 7459, at *3 (E.D. Pa. May 31, 1996) . 9

Batten v. Glob. Contact Servs., LLC, 15-CV-2382, 2018 U.S. LEXIS 105327 (S.D.N.Y. June 22, 2018) ................................................................................................................................... 13

Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1048 (D. Hi. 2000) .............................. 9

Boston v. Taconic Mgmt. Co., 12-CV-4077, 2014 U.S. Dist. LEXIS 117517, at *2 (S.D.N.Y. Aug. 22, 2014) .................................................................................................................................. 12

Boyd v. James S. Hayes Living Health Care Agency, Inc., 671 F. Supp. 1155, 1167 (W.D. Tenn. 1987) ...................................................................................................................................... 9

Burrell v. City Univ. of New York, 894 F. Supp. 750, 761 (S.D.N.Y. 1995) .................................... 10

Conklin v. County of Suffolk, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012) ..................................... 12

Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) .......................... 10

Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103, 113-114 (E.D.N.Y. 2001) .. 11

EEOC v. Domino's Pizza, 909 F. Supp. 1529, 1533 (M.D. Fla. 1995) .............................................. 9

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.4 (3rd Cir. 2000) ...................................... 10

Farrell v. Planters Lifesavers Co., 22 F. Supp. 2d 372, 392 (D.N.J. 1998) ..................................... 10

Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001) ............................................................ 9

Fitzgerald v. Henderson, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998) .............................................. 10

Fleming v. South Carolina Dept. of Corrections, 952 F. Supp. 283, 288 (D.S.C. 1996) ................... 9

Gonzalez v. City of New York, 15-CV-3158, 2015 U.S. Dist. Lexis 170605, at *5 (E.D.N.Y. Dec. 22, 2015) .................................................................................................................................. 9

Hughes v. Twenty-First Century Fox, Inc., 304 F.Supp. 3d 429, 448, (S.D.N.Y. 2018) ................... 8

Johnson v. County of Nassau, 82 F. Supp. 3d 533 (E.D.N.Y. 2015) ............................................. 12

Lashley v. New life Bus. Inst., Inc., 13-CV-2683, 2015 U.S. Dist. LEXIS 28383, (E.D.N.Y. Mar. 9, 2015) .................................................................................................................................... 9

Lewis v. Triborough Bridge & Tunnel Auth., 97-CV-0607, 2001 U.S. Dist. LEXIS 361, at *2 (S.D.N.Y. Jan. 18, 2001) ................................................................................................... 11

Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2009) ...................... 11

Mihalik v. Credit Argicole Cheuvreux N. Am., Inc., 715 F.3d 102, 111 (2d. Cir. 2013) .................... 8

Murray v. Chicago Transit Auth., 252 F.3d 880, 890 (7th Cir. 2001) ............................................... 10

Rashid v. Beth Israel Med. Ctr., 96-CV-1833, 1998 U.S. Dist. LEXIS 15602, at *2 (S.D.N.Y. Oct. 2, 1998) ........................................................................................................................... 10

Salvatore v. KLM Royal Dutch Airlines, 98-CV-2450, 1999 U.S. Dist. LEXIS 15551, at *8 (S.D.N.Y. Sept. 30, 1999) ..................................................................................................... 12

Speer v. Rand, 95-CV-6265, 1996 U.S. Dist. LEXIS 17071, at *8 n.4 (N.D. Ill. Nov. 15, 1996) .... 10

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) ........................................................................... 7

Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) ........................................................................ 7

Zheng v. GE, 15-CV-1232, 2016 U.S. Dist. LEXIS 4307, at *13-15 (N.D.N.Y. Jan. 12, 2016) ...... 12

**Statutes**

New York City Human Rights Law ..................................................................................................... 7

Fed. R. Civ. P. § 12(b)(6)……………………………………………………………………...7, 13

**PRELIMINARY STATEMENT**

Plaintiff respectfully submits the following Memorandum in Opposition to Defendant Jackson's "Motion to Dismiss Plaintiff's Amended Complaint" dated 4/1/2019 ("Jackson's MOL").

Under the broad New York City Human Rights Law, Plaintiff has sufficiently plead that whil employed at Children's Aid College Prep Charter School ("CACPS") and Children's Aid Society ("CAS") her direct refusal to submit to Defendant Jackson's sexual advances/assaults demonstrate she engaged in protected activity. Plaintiff further shows that after engaging in protected activity, Defendant Jackson's actions, taken in the totality of the circumstances, would deter a reasonable person from engaging in similar protected activity and are therefore retaliatory. Finally, as a matter of law, Defendant Jackson can be held liable for aiding and abetting Defendants CAS and CACPS in their discrimination and retaliation of Plaintiff, and the Complaint alleges facts sufficient to support this claim.

**STATEMENT OF RELEVANT FACTS FROM THE AMENDED COMPLAINT**

    **i.**    **Sexual Harassment of Plaintiff (and others):**

At all times relevant, PLAINTIFF GAYLE was employed with Defendant CACPS as a Visual Arts Instructor. (*Exhibit A*, Plaintiff's Amended Complaint ¶26). DEFENDANT JACKSON was the Dean of Students and was PLAINTIFF'S supervisor. (*Id.* ¶29).

Starting around March 6, 2015, DEFENDANT JACKSON began to subject PLAINTIFF to sexual harassment and a hostile work environment. (*Id.* ¶31). Specifically, in March 2015, DEFENDANT JACKSON spoke to PLAINTIFF about a different high school at which he worked and stated, in sum and substance, that he "*would have liked to get with some of them [students], but was afraid that it would get back to administration.*" (*Id.* ¶32). PLAINTIFF was shocked by DEFENDANT JACKSON'S admission. But, PLAINTIFF did not complain because she did not want to create issues in her new job (*Id.* ¶33).

But then, DEFENDANT JACKSON began to turn his attention to PLAINTIFF and began to make inappropriate comments to Plaintiff such as, "*You're pretty*" and "*You have a nice shape.*" DEFENDANT JACKSON also told PLAINTIFF when she wore a dress that he "*would have thought that since [she has] a thick bottom*" that PLAINTIFF also had "*big ankles*" despite her voluptuous shape. (*Id.* ¶¶34-36).

Between March 2015 and May 2015, DEFENDANT JACKSON'S inappropriate comments toward/about PLAINTIFF became regular and frequent. (*Id.* ¶39). In May of 2015, DEFENDANT JACKSON escalated his sexual harassment against PLAINTIFF and began touching PLAINTIFF whenever he talked to her. At first, DEFENDANT JACKSON would touch/grab PLAINTIFF'S shoulder. Later, DEFENDANT JACKSON'S touching progressed to touching various parts of PLAINTIFF'S body, including but not limited to grabbing and holding her hand and touching her legs and thighs. (*Id.* ¶¶40-42). DEFENDANT JACKSON would grab PLAINTIFF'S hand and would then rub his middle finger in PLAINTIFF'S palm. PLAINTIFF understood this gesture to be a crude sexual advance and/or a message that DEFENDANT JACKSON was propositioning PLAINTIFF for sex. (*Id.* ¶¶43-45). DEFENDANT JACKSON asked PLAINTIFF if she "*shaved her vagina or not?*" (*Id.* ¶46). These inappropriate questions, sexual suggestions and comments would take place at various locations within the CACPS facility, including the hallways, PLAINTIFF'S classroom, outside during recess and/or during times that the teachers were outside supervising the children. (*Id.* ¶47).

On multiple occasions towards the latter part of the 2014-2015 school year, DEFENDANT JACKSON began grabbing/touching PLAINTIFF'S buttocks and crotch areas on a frequent basis. DEFENDANT JACKSON would do this in PLAINTIFF'S art room, in hallways, in their shared office and in other locations throughout the school. DEFENDANT JACKSON attempted to reach

2

under PLAINTIFF'S dresses or skirts so often that PLAINTIFF began only wearing pants to work. (*Id.* ¶¶48-51).

DEFENDANT JACKSON came to PLAINTIFF'S classroom throughout 2014-2015 school year, and made offensive sexual advances toward PLAINTIFF. Specifically, DEFENDANT JACKSON would ask PLAINTIFF to have sex with him and also continued to ask PLAINTIFF if he could feel her crotch. On another occasion at the end of the 2014-2015 school year, in or around June 2015, DEFENDANT JACKSON grabbed PLAINTIFF'S pants by the waist and attempted to pull them down to reveal the color of PLAINTIFF'S underwear. (*Id.* ¶¶52-55). JACKSON stated that he wanted to see if PLAINTIFF shaved below her belt. (*Id.*).

PLAINTIFF continued to tolerate JACKSON'S sexual harassment/assaults because PLAINTIFF just wanted to get through the school year as an employee at DEFENDANT CAS/CACPS without problems/issues. PLAINTIFF also believed that her complaints would be futile as DEFENDANT JACKSON was a high-ranking administrator at CAS/CACPS and it was well-known that he had a good relationship with the Principal, DEFENDANT VIER. (*Id.* ¶¶57-58).

The following school year (2015 - 2016), when PLAINTIFF was given a raise in her salary, DEFENDANT JACKSON was sure to advise PLAINTIFF that he helped PLAINTIFF to secure a raise. Specifically, DEFENDANT JACKSON told Plaintiff, "*I helped you to get that raise*," "*you owe me for that*," and "*you gotta [sic] find a way really fast to repay me for that*." DEFENDANT JACKSON specifically told PLAINTIFF that she should sleep with him, that very same week, for allegedly "helping" PLAINTIFF to get a raise in her salary. (*Id.* ¶¶59-62).

During the 2015 - 2016 school year, DEFENDANT JACKSON, who was obviously staring at PLAINTIFF'S rear-end, began referring to PLAINTIFF'S panty-lines and commenting on the type of panties PLAINTIFF was wearing. DEFENDANT JACKSON told Plaintiff to, "*stop wearing big girl draws because they mess up your shape and makes your butt look funny in the pants you're*

3

*wearing.*" (*Id.* ¶¶63-65). Throughout the entire 2015 - 2016 school year, DEFENDANT JACKSON continued to subject PLAINTIFF to the same types of sexual comments, propositions, sexual gestures on a daily basis. (*Id.*).

On July 17, 2016, PLAINTIFF and DEFENDANT JACKSON attended the same wedding for a coworker. During this wedding, DEFENDANT JACKSON continued flirt with PLAINTIFF and told PLAINTIFF that he "*still want[ed] to [have sex with her]*." (*Id.* ¶¶69-70). DEFENDANT JACKSON continued to suggest during this wedding that PLAINTIFF should have sex with him. PLAINTIFF rebuffed his advances and suggestions and tried to avoid JACKSON from that point going forward. (*Id.* ¶¶71-72).

In or around August 2016 DEFENDANT JACKSON, in a threatening manner, forcefully backed PLAINTIFF up against a wall in a hallway located on the third-floor of the school. PLAINTIFF was trapped and could not get away from DEFENDANT JACKSON. (*Id.* ¶¶74-75). DEFENDANT JACKSON then started making sexual comments at PLAINTIFF and domineeringly asked Plaintiff "*when [she] would make time for [him] that week*," stating, "*You need stop trying to avoid me.*" (*Id.* ¶70). The Complaint alleges that this incident was witnessed by **Dean** Jacqueline Williams and **School Director** Lyrica Filsame - **who filed incident reports about the incident**. (*Id.* ¶¶78-79). The Complaint asserts that the above-mentioned administrators had notice of DEFENDANT JACKSON'S inappropriate conduct toward PLAINTIFF as they both witnessed the incident and reported same. (*Id.* ¶79).

The Amended Complaint alleges that despite the fact that these physically threatening actions and sexually harassing statements were committed by Defendant Jackson in front of two high-level administrators, who both reported the incident to DEFENDANTS CACPS and VIER, **no action was taken against DEFENDANT JACKSON and DEFENDANT JACKSON was allowed to continue his harassment of PLAINTIFF unchecked.** (*Id.* ¶¶78-84). At this time PLAINTIFF also

4

complained to Emily Seyburne, the Dean of Instruction, that she did not feel comfortable working with DEFENDANT JACKSON. (*Id.* ¶82). No investigation was conducted. As a result, DEFENDANT JACKSON continued throughout the course of 2017 to sexually harass PLAINTIFF. (*Id.* ¶85).

On at least 30 occasions total, DEFENDANT JACKSON would grab PLAINTIFF'S hand and make the sexual gesture wherein he rubbed his finger in her palm(s). (*Id.* ¶86). When PLAINTIFF could no longer endure the abuse, she began trying to figure out how to report JACKSON'S sexual harassment to the principal, DEFENDANT VIER. (*Id.* ¶88). As DEFENDANT VIER'S relationship with JACKSON was well known - coupled with the fact that two administrators made VIER aware of JACKSON'S prior physical and sexually harassing conduct toward PLAINTIFF and did nothing about it - Plaintiff was scared to further complain. Indeed, on one occasion, PLAINTIFF complained to DEFENDANT VIER about DEFENDANT JACKSON'S other conduct at the school and was told "***no one can say anything to me about [Defendant Jackson]***" and brushed-off PLAINTIFF'S complaint. (*Id.* ¶¶89-90).

Once PLAINTIFF began to ignore JACKSON and his sexual harassment, and after PLAINTIFF was told that she could not complain about DEFENDANT JACKSON, in the year 2017, DEFENDANT JACKSON began to retaliate against PLAINTIFF. (*Id.* ¶91). Among other things, JACKSON started preventing PLAINTIFF from going to lunch because she ignored his sexual comments and advances. (*Id.*).

In March 2017, DEFENDANT JACKSON locked his keys in his car and directed PLAINTIFF to drive him to his house to pick up his spare keys. When they arrived at Jackson's home, DEFENDANT JACKSON urged PLAINTIFF to stay for a sexual encounter. (*Id.* ¶¶92-95). PLAINTIFF refused DEFENDANT JACKSON'S request. (*Id.* ¶96). On or about May 19, 2017, DEFENDANT JACKSON asked PLAINTIFF to go to a hotel with him for his birthday, which she

5

again refused. (*Id.* ¶97). After complaining to multiple individuals and repeatedly refusing DEFENDANT JACKSON'S advances and being forced to avoid him, JACKSON continued to retaliate by, among other things, holding "pop up" meetings with DEFENDANT VIER wherein he would complain to DEFENDANT VIER about issues involving PLAINTIFF from weeks or months prior, in an attempt to have PLAINTIFF disciplined by another supervisor. (*Id.* ¶100).

The Amended Complaint alleges that "multiple staff members, including teachers have witnessed DEFENDANT JACKSON'S inappropriate conduct toward PLAINTIFF," and names at least sixteen (6) individuals. (*Id.* ¶¶98, 102, 104, 108, 109). Throughout the 2016 - 2017 school year, PLAINTIFF complained on multiple occasions about DEFENDANT JACKSON and his [mis]treatment of PLAINTIFF. PLAINTIFF complained to DEFENDANT VIER'S executive assistants, Miriam Nieves and Mrs. Zorilla. Both of these individuals told PLAINTIFF that "*it's a tough thing to deal with*" and that it would be uncomfortable to deal with every day at the job. (*Id.* ¶¶102-103). However, they each told PLAINTIFF that PLAINTIFF needed to decide how to handle the situation on her own. (*Id.*). PLAINTIFF also complained to the school's receptionist, Ms. Bland. (*infra*). Ms. Bland told PLAINTIFF, among other things, that PLAINTIFF should not complain because the school needed DEFENDANT JACKSON. (*Id.* ¶¶104-107).

The Amended Complaint alleges that, through complaining, PLAINTIFF learned that four of the aforementioned individuals to which PLAINTIFF complained were also victims of similar conduct from DEFENDANT JACKSON and had also witnessed DEFENDANT JACKSON being inappropriate with students by making female students do cartwheels in their skirts. (*Id.* ¶¶109-112).

As per the Amended Complaint, DEFENDANT JACKSON continued his sexually harassive and abusive conduct against PLAINTIFF until on or about June 2017. (*Id.* ¶113). During this time, DEFENDANT JACKSON also created a hostile work environment for PLAINTIFF. (*Id.* ¶114-117).

The Amended Complaint alleges that DEFENDANT JACKSON'S sexual abuse of PLAINTIFF over the course of years was a "Continuing Violation" against PLAINTIFF'S rights and bodily integrity. (*Id.* ¶121).

### ii. Plaintiff Makes a Complaint and No Action Was Taken:

On or about June 20, 2017, at the end of the 2017 school year, PLAINTIFF made a formal written complaint to the Principal, DEFENDANT VIER. (*Id.* ¶¶124-126). **The Amended Complaint asserts that, following Plaintiff's complaint, "no action was taken against DEFENDANT JACKSON." (*Id.* ¶111). Instead, DEFENDANT JACKSON voluntarily resigned and/or was allowed to resign without disciplinary action sometime during the summer of 2017.** (*Id.* ¶¶136-140). [*emphasis supplied*]. The Amended Complaint asserts that DEFENDANTS attempted to protect DEFENDANT JACKSON, his dignity and his reputation, to the detriment of PLAINTIFF and the other female employees that he violated. (*Id.*).

### STANDARD OF REVIEW

A court may grant a Fed. R. Civ. P. § 12(b)(6) motion to dismiss for failure to state a claim only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). All of the factual allegations in the complaint must be accepted as true and all inferences drawn in the light most favorable to the plaintiff. Id.

### POINT I.
### THE COMPLAINT PROPERLY ALLEGES THAT DEFENDANT JACKSON IS LIABLE FOR RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

In Point I of his Memorandum, Defendant Jackson argues that Plaintiff's Retaliation claim under the New York City Human Rights Law ("NYCHRL") fails because Plaintiff does not allege that she engaged in protected activity, and if she did, the retaliation claim still fails because Defendant Jackson "took no materially adverse actions against [Plaintiff]." (See Jackson MOL p. 7.) Defendant

7

Jackson's almost frivolous argument that Plaintiff did not engage in protected activity before the alleged retaliation fails because the Complaint alleges that Plaintiff unequivocally rejected Defendant Jackson's advances and faced retaliation and an increased hostile work environment as a result. Defendant Jackson's argument, that he did not retaliate against Plaintiff because of her engagement in protected activity, is also baseless as he applies an incorrect standard and ignores the totality of the circumstances which clearly demonstrates Defendant Jackson's repeated acts of retaliation.

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik v. Credit Argicole Cheuvreux N. Am., Inc., 715 F.3d 102, 111 (2d. Cir. 2013). "…[E]ven if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." (Id. at 109.) Under the NYCHRL "[r]ejecting sexual advances from an employer constitutes 'protected' activity. The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination. Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct." Hughes v. Twenty-First Century Fox, Inc., 304 F.Supp. 3d 429, 448, (S.D.N.Y. 2018). "[T]he totality of the circumstances must be considered because 'the overall context in which [the challenged conduct occurs] cannot be ignored'" when analyzing alleged retaliatory actions under the NYCHRL. Mahalik, 715 F.3d at 113.

    a.    **Plaintiff Engaged In Protected Activity.**

Defendant Jackson wrongfully argues that Plaintiff's "rejection of Jackson's sexual advances…" are not protected activity. (Jackson MOL p. 6.) Defendant Jackson misstates the applicable law arguing that rejecting sexual advances is not alone protected activity by inaccurately applying Gonzalez v. City of New York, 15-CV-3158, 2015 U.S. Dist. Lexis 170605, at *5 (E.D.N.Y.

Dec. 22, 2015). Defendant's argument is misplaced because Gonzalez relies on Lashley v. New life Bus. Inst., Inc., 13-CV-2683, 2015 U.S. Dist. LEXIS 28383, (E.D.N.Y. Mar. 9, 2015) for the proposition that rejecting sexual advances it not protected activity. However, Lashley specifically analyzes Title VII, not the NYCHRL, and Hughes is clear that under the NYCHRL, sexual advances "'qualified as an unlawful employment practice,' and [the plaintiff] engaged in protected activity each time she rejected them." Hughes, 304 F.Supp. 3d at 448 (internal citations omitted). Defendant Jackson "cherry picked" cases that say that rejection is not protected activity. However, there are many more cases which hold that rejection is protected activity. See Little v. Nat'l Broad. Co., Inc., 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002) ("Rejecting sexual advances from an employer constitutes 'protected activity.' The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination. Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct."); Laurin v. Pokoik, 02-CV-1938, 2005 U.S. Dist. LEXIS 6728, at *4 (S.D.N.Y. Apr. 18, 2005); Johnson v. MediSys Health Network, 10-CV-1596, 2011 U.S. Dist. LEXIS 156828, at *16 (E.D.N.Y. June 1, 2011) ("There is no reason to disagree with the view of the majority of courts that allegations that an employee consistently refused her supervisor's sexual advances constitutes 'protected activity' for purposes of a retaliation claim."); Cooper v. N.Y. State Dep't of Labor, 819 F.3d 678, 681 (2d Cir. 2016) (the court held that rejecting sexual advances "qualified as an unlawful employment practice…"); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (protected activity is "action taken to protest or oppose statutorily prohibited discrimination").[1] Plaintiff's numerous

---

[1] "The majority of courts in other districts have held that an employee's refusal to submit to sexual advances constitutes "protected activity." Little, 210 F. Supp. 2d , at 385; see Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1048 (D. Hi. 2000) (collecting cases); see also Fleming v. South Carolina Dept. of Corrections, 952 F. Supp. 283, 288 (D.S.C. 1996)(refusal of sexual advances constitutes "protected activity"); Farrell v. Planters Lifesavers Co., 22 F. Supp. 2d 372, 392 (D.N.J. 1998), aff'd in part, reversed in part on other grounds, 206 F.3d 271 (3rd Cir. 2000); Armbruster v. Epstein, 96- CV-1059, 1996 U.S. Dist. LEXIS 7459, at *3 (E.D. Pa. May 31, 1996) (same); Boyd v. James S. Hayes Living Health Care Agency, Inc., 671 F. Supp. 1155, 1167 (W.D. Tenn. 1987)(same); EEOC v. Domino's Pizza, 909 F. Supp. 1529, 1533 (M.D. Fla. 1995) (same); but see Fitzgerald v. Henderson, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), aff'd in part, reversed in part on other grounds, 251 F.3d 345 (2d Cir. 2001); Speer v. Rand, 95-CV-6265, 1996 U.S. Dist. LEXIS

rejections of Defendant Jackson's sexual advances, which Defendant does not deny, constituted protected activity before Jackson's alleged retaliation.

### b. Defendant Jackson's Actions Constitute Retaliation.

Plaintiff's allegations clearly show that Defendant Jackson "engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mahalik, 715 F.3d 102 at 111. Viewing the facts alleged under the totality of the circumstances, as is required, Defendant Jackson's acts of preventing Plaintiff from taking lunches, holding "pop-up" meetings with the sole purpose of complaining about Plaintiff to Defendant Vier for issues weeks or months prior, and attempting to get Plaintiff reprimanded would reasonably deter a person from engaging in protected activity. See Mahalik, 715 F.3d (holding a jury could find that speaking ill of the plaintiff in front of colleagues and not sitting next to the plaintiff, which was customary, would deter a reasonable person from opposing harassing conduct).

Defendant Jackson grossly understates Plaintiff's allegations and characterized the "pop-up" meetings as "mere inconveniences," but then cites to no caselaw that supports that statement, and instead cites to a string of cases relating to schedule changes. Pop-up meetings meant to intimidate and inconvenience Plaintiff would reasonably deter Plaintiff and others from engaging in protected activity. Separating each retaliatory allegation, as Defendant Jackson does, is not the standard;

---

17071, at *8 n.4 (N.D. Ill. Nov. 15, 1996), aff'd on other grounds, 123 F.3d 658 (7th Cir. 1997). "Neither the Second Circuit, nor any other circuit court, has ruled on whether resisting an employer's sexual advances constitutes 'protected activity' for purposes of establishing retaliation." Little, 210 F. Supp. 2d , at 385; See Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001)("We need not rule on the district court's view that 'rejection of sexual advances is not a protected activity under Title VII . . ."); Murray v. Chicago Transit Auth., 252 F.3d 880, 890 (7th Cir. 2001) ("We need not decide whether a plaintiff who rejects a sexual invitation from a supervisor has met the first element of a claim for retaliation because, as discussed above, [Plaintiff] failed to demonstrate that she suffered an adverse employment action . . ."); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.4 (3rd Cir. 2000) ("The District Court held that the rejection of a sexual advance was a protected activity, and that determination has not been questioned on appeal. Therefore, we do not need to address it."). "The district courts in this Circuit are split on this issue." Little, 210 F. Supp. 2d , at 385; see Rashid v. Beth Israel Med. Ctr., 96-CV-1833, 1998 U.S. Dist. LEXIS 15602, at *2 (S.D.N.Y. Oct. 2, 1998) (Schwartz, J.)(noting district split); Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) (Rakoff, J.)(holding that refusal to submit to sexual advances does not constitute protected activity because "if it were otherwise, every harassment claim would automatically state a retaliation claim as well."); Burrell v. City Univ. of New York, 894 F. Supp. 750, 761 (S.D.N.Y. 1995) (Sweet, J.) (holding that refusal to submit to sexual advances constitutes protected activity).

Plaintiff's allegations must be analyzed in the aggregate, and once this is done, Plaintiff easily meets the pleading burden to allege that Defendant Jackson's actions would deter others from complaining about his sexual harassment.

Accordingly, Plaintiff's NYCHRL claims against Defendant Jackson should proceed.

### POINT II.
### PLAINTIFF'S AIDING AND ABETTING CLAIM AGAINST DEFENDANT JACKSON UNDER THE NYCHRL ARE PROPER

In Point II of his Memo, Defendant Jackson argues that he cannot be liable for aiding and abetting his own discriminatory conduct. (See Jackson MOL p. 9). As an initial matter, the Complaint does not assert that Defendant Jackson aided and abetted his own discriminatory conduct. Instead, the Complaint properly pleads that Defendant Jackson is "**liable for aiding and abetting DEFENDANT CACPS AND CAS** in the discrimination and wrongful retaliation faced by PLAINTIFF." (Complaint ¶¶197, 198, 240, 241).

As an initial matter, "the same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws are "virtually identical." Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103, 113-114 (E.D.N.Y. 2001).

The above allegations are proper as a matter of law (*infra*). "An individual may be liable under § 296(6) for aiding and abetting an unlawful discriminatory practice of his **employer even where his conduct serves as the sole predicate for the employer's liability**." Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2009), *citing,* Lewis v. Triborough Bridge & Tunnel Auth., 97-CV-0607, 2001 U.S. Dist. LEXIS 361, at *2 (S.D.N.Y. Jan. 18, 2001) (stating that "this Court follows the majority of decisions in this district in recognizing that an individual can be liable for aiding and abetting his own discriminatory conduct"); see also, Salvatore v. KLM Royal Dutch Airlines*,* 98-CV-2450*,* 1999 U.S. Dist. LEXIS 15551, at *8 (S.D.N.Y. Sept. 30, 1999)

(declining to dismiss claims against individual defendant pursuant to § 296(6) where the defendant was "the sole KLM employee alleged to have engaged in the discriminatory conduct"). According to the Court in Maher, cited above: "the Court recognizes that, because Plaintiff's complaint is replete with assertions that [Defendants] 'actually participated' in the alleged discriminatory conduct that produced the alleged hostile work environment, Defendant may be held liable for aiding and abetting his own conduct under § 296(6)."

"A defendant may be held liable for aiding and abetting allegedly unlawful discrimination by her employer **even where her actions serve as the predicate for the employer's vicarious liability**." Conklin v. County of Suffolk, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012); Maher, 650 F. Supp. 2d 249, at 262-63. Further, "an employee can be liable even where the NYSHRL discrimination claim against the employer has been dismissed. Zheng v. GE, 15-CV-1232, 2016 U.S. Dist. LEXIS 4307, at *13-15 (N.D.N.Y. Jan. 12, 2016), citing, Johnson v. County of Nassau, 82 F. Supp. 3d 533 (E.D.N.Y. 2015) (permitting section 296(6) claim against individual the defendants to proceed even though **discrimination** claim against the employer was procedurally barred); Boston v. Taconic Mgmt. Co., 12-CV-4077, 2014 U.S. Dist. LEXIS 117517, at *2 (S.D.N.Y. Aug. 22, 2014) ("[A]ssuming that the alleged **discrimination** can be imputed to the defendant employer as the plaintiff's employer, the individual defendant can be held liable for aiding and abetting regardless of whether his actions form the basis for the defendant employer's liability in the first instance." Zheng, 2016 U.S. Dist. LEXIS at *13-15.

Here, Plaintiff alleges that Defendant Jackson failed to take adequate actions to correct the discrimination once he knew that Plaintiff was rejecting his advances, and then retaliated against Plaintiff for complaining. Viewing these allegations in a favorable light, the Complaint supports that Defendant Jackson thereby encouraged, condoned or approved of the Corporate Defendants' conduct in allowing the discrimination to continue. "It is axiomatic that a corporation can only act through its

employees; therefore, [Defendant CAS/CACPS] can 'encourage, condone, or approve' discrimination by the acts of supervisors like [Defendant Jackson] herein." Hicks v. IBM, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999). "Thus, it is possible that these individual Defendant [Jackson] may be liable under § 296(6) for aiding [CAS/CACPS'] violation."

Defendant Jackson incorrectly compares Plaintiff's complaint to the facts in Batten v. Glob. Contact Servs., LLC, where the court dismissed aiding and abetting claims based on the defendant aiding and abetting his own conduct. 15-CV-2382, 2018 U.S. LEXIS 105327 (S.D.N.Y. June 22, 2018). However, that argument is misplaced because, as stated above, Plaintiff does not allege that Defendant Jackson aided and abetted his own conduct, but rather Defendant Jackson's own conduct aided and abetted CAS and CACPS's discriminatory and retaliatory conduct against Plaintiff, which is supported under the law in Maher. See generally Maher, 650 F. Supp. 2d.

Accordingly, the Amended Complaint states sufficient facts of personal involvement and "aiding and abetting" by Defendant Jackson and Plaintiff's NYCHRL claims must survive Defendant's 12(b) motion.

## CONCLUSION

For all of the above reasons, Defendant Jackson's motion to dismiss should be denied in its entirety. Should the Court believe that any allegations contained in Plaintiff's Amended Complaint are insufficient, Plaintiff respectfully requests leave to file a Second Amended Complaint to further amplify the pleadings.

Dated: New York, New York
    April 9, 2019
                                         **PHILLIPS & ASSOCIATES,**
                                         **ATTORNEYS AT LAW, PLLC**
                                By: _____/S_____
                                         Gregory Calliste, Jr.
                                         Siobhan Klassen