UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

LA TASHIA GAYLE,

                    Plaintiff,

       -against-

CHILDREN'S AID COLLEGE PREP
CHARTER SCHOOL, CHILDREN'S AID
SOCIETY, CASEY VIER, *in her individual and
official capacities*, and DEVON JACKSON, i*n
his individual and official capacities*,

                    Defendants.

------------------------------------- x



MEMORANDUM DECISION
AND ORDER

18 Civ. 9874 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff La Tashia Gayle brings this sexual harassment and discrimination claim against Defendants the Children's Aid College Prep Charter School (the "School"), Defendant the Children's Aid Society (the "Society"), Casey Vier, and Devon Jackson. (First Am. Compl. ("FAC"), ECF No. 20.) She asserts claims of discrimination and retaliation against the School and the Society under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a)–(c) (Counts I and II), and New York State Human Rights Law ("NYSHRL"), New York Executive Law Section 296 (Counts III and IV). (*Id.* ¶¶ 184–247.) She also raises discrimination and retaliation claims against all Defendants under the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code, § 8-107(1), (6) (Counts V and VI). (*Id.* ¶¶ 248–82.) Finally, she raises claims for aiding and abetting discrimination and retaliation against the individual Defendants Casey Vier and Devon Jackson under the NYCHRL, New York City Administrative Code, § 8-107(7). (*Id.* ¶¶ 283–89.)

    The School and the Society separately move to dismiss Plaintiff's Title IX claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot. to

Dismiss Am. Compl. ("Society's MTD"), ECF No. 35; Notice of Mot. to Dismiss Pl.'s Am. Compl. ("School's MTD"), ECF No. 39.) These motions are GRANTED. Plaintiff's employment discrimination claims are not actionable under Title IX. This Court declines to exercise ancillary jurisdiction over Plaintiff's state and city law claims against any Defendant. Accordingly, because this Court would only have original jurisdiction over Plaintiff's Title IX claims against the School and the Society, Plaintiff's amended complaint is dismissed in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Jackson Sexually Harassed and Assaulted Plaintiff from March 6, 2015 Until June 20, 2017.

Plaintiff alleges that she began working for the School on October 26, 2012 as a Community Associate and shortly thereafter as a Visual Arts Instructor. (FAC ¶ 26.) She alleges that Defendant Jackson, her supervisor, began making inappropriate comments to her on March 6, 2015, shortly after he was hired to be the Dean of Students and Culture. (*Id.* ¶¶ 31–35, 46, 114.) According to Plaintiff, in May 2015, the inappropriate comments escalated to sexual advances and inappropriate touching. (*Id.* ¶ 40.) He would touch and grab several of Plaintiff's body parts, including her shoulder, legs, and thighs. (*Id.* ¶ 41.) He also tried to hold her hand. (*Id.*) Soon Jackson became more aggressive, rubbing his middle finger in Plaintiff's palm when he grabbed her hands. (*Id.* ¶ 43.)

Towards the end of the 2014–15 academic school year, Jackson allegedly began to sexually assault Plaintiff in her "art room, in hallways, in their shared office and in other locations throughout the School." (*Id.* ¶ 50–54.) He would touch and grab her crotch and buttocks. (*Id.* ¶

---

[1] The following factual allegations are taken from the amended complaint (as well as documents attached to it or incorporated by reference) and are deemed to be true for purposes of the City's motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

49.) Jackson coupled his assaults with sexually suggestive comments, asking Plaintiff to have sex with him and to let him feel her crotch. (*Id.* ¶ 53.)

Plaintiff received a salary increase for the 2015–16 school year, which prompted further sexual advances from Jackson. (*Id.* ¶ 60.) He told Plaintiff that he helped her get that raise, that she owed him for it, and that she had to sleep with him "that very same week" to "repay him." (*Id.* ¶¶ 60–62.) Throughout the entire 2015–16 and 2016–17 academic school years Jackson subjected Plaintiff "to the same types of sexual comments, innuendo, propositions, sexual gestures and other inappropriate conduct on a daily basis." (*Id.* ¶ 65, 86–87, 92–97.) During this time, Jackson also began to send Plaintiff sexually inappropriate and explicit text messages from his personal phone. (*Id.* ¶ 99.)

Plaintiff alleges that she categorically and repeatedly refused Jackson for the more than two years that he subjected her to his sexual harassment and assaults. (*Id.* ¶¶ 96–97.)

### B. School Administrators and Other Teachers Allegedly Witnessed Jackson Sexually Harassing Plaintiff.

In her amended complaint Plaintiff lists the names of twelve "staff members, including teachers, [who] have witnessed [Jackson's] inappropriate conduct toward Plaintiff" during the 2015–16 and 2016–17 school years. (*Id.* ¶¶ 98, 108–111.) For example, in or around August 2016, Plaintiff alleges that Jackson forcefully backed her up against a wall in a hallway and started aggressively making sexual comments about her, namely, asking her when she would make time for him, and saying "you need to stop trying to avoid me." (*Id.* ¶ 74–76.) Plaintiff claims that she "was visibly uncomfortable and afraid." (*Id.* ¶¶ 77–78.) Both the School Dean and School Director, high-level administrators of the Society, witnessed this incident in the hallway and filed incident reports about it with the School and the Society. (*Id.*)

3

### C. Plaintiff Informally Complained About Jackson's Sexual Harassment to School Staff Members.

Plaintiff alleges that, starting in 2016, she complained about Jackson's harassment and abuse to several School staff members. At some point in 2016, she complained about it to a life coach employed by the Society. (*Id.* ¶ 67.) Plaintiff allegedly also complained about Jackson's conduct to the Dean of Instruction, to Principal Vier's executive assistants, and to the School's receptionist. (*Id.* ¶ 82–83, 103–106.) All of these individuals allegedly counseled Plaintiff to handle Jackson's abuse on her own.

### D. Plaintiff Formally Complained on June 20, 2017.

Jackson's abusive behavior lasted until July 20, 2017, when "Plaintiff finally got the courage to make a formal complaint to [Principal Vier] about Jackson's sexual harassment." (*Id.* ¶ 124.) She provided Principal Vier and a human resources manager details of Jackson's "ongoing and continuous groping, sexual touching, sexual inuendo, sexual comments, sexual gestures, and about his sexually explicit questions." (*Id.* ¶ 128.) She also provided them with documentary evidence to support her allegations. (*Id.* ¶ 129.)

### E. Jackson Resigned the Summer of 2017.

Jackson resigned after Plaintiff filed her formal complaint in the summer of 2017, before the start of the 2017–18 school year. (*Id.* ¶ 137.) Plaintiff maintains that, "upon information and belief, *no disciplinary action was taken* against Jackson after Defendants confirmed that he was sexually harassing Plaintiff." (*Id.* ¶ 136.) Plaintiff does not offer, however, any basis for her contention that Jackson "was allowed to resign without disciplinary action." (*Id.* ¶ 137.) Instead, she admits that Defendants "never discussed Plaintiff's complaint against Jackson with Plaintiff . . . [leaving her] in the dark about what, if any, actions were taken." (*Id.* ¶¶ 141–43).

### F. Principal Vier Allegedly Retaliated Against Plaintiff for Complaining About Jackson's Harassment.

Plaintiff claims that Principal Vier retaliated against her and subjected her to a hostile work environment "due to her complaint of sexual harassment and discrimination." (*Id.* ¶¶ 144–45.) First, she alleges that Vier completely stopped communicating with her other than to reprimand her, leading Plaintiff to feel isolated. (*Id.* ¶¶ 147–51.) She also claims that Defendants altered her work schedule to make it harder for her to do her job. (*Id.* ¶ 152–60.)

Plaintiff also pleads that she has been written up twice after she complained about Jackson's abuse "for unreasonable reasons." (*Id.* ¶ 167.) The first time, she was allegedly written up for not saying "hi" to a parent. (*Id.* ¶ 168.) The second time, she was written up for supposedly raising her voice at her students. (*Id.* ¶ 169.)

The trauma of Jackson's alleged sexual harassment and assault, coupled with Principal Vier's alleged retaliation, caused Plaintiff to suffer from loss of sleep, anxiety, and major depression, leading her to seek a leave of absence from April 5, 2018 to May 7, 2018. (*Id.* ¶¶ 165, 171–72.) Plaintiff maintains that the retaliation against her is ongoing since she returned to the school in the fall of 2018. (*Id.* ¶ 173.)

In June 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 17.) On October 25, 2018, Plaintiff filed the instant action. (Compl., ECF No. 1.) She amended her complaint on January 29, 2019. (FAC.) The School, the Society, and Principal Vier moved to dismiss the amended complaint on February 28, 2019. (School's MTD; Society's MTD.) Jackson also moved to dismiss the amended complaint on April 1, 2019. (Jackson's MTD.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brown*

*v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While "the plausibility standard is not akin to a probability requirement," *id.* (internal quotation marks omitted), the plaintiff must "nudge[ ] [her] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. A court must take "factual allegations [in the complaint] to be true and draw [ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). Legal conclusions, conversely, do not benefit from a presumption of truth. *See Iqbal*, 556 U.S. at 678.

A district court can first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding a 12(b)(6) motion, the court also draws all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III. PLAINTIFF'S TITLE IX CLAIMS ARE DISMISSED

Plaintiff alleges Title IX liability against the School and the Society on two grounds: first, that Jackson subjected her to workplace sexual harassment and a hostile work environment, and second, that the School and the Society subjected her to a further hostile work environment and adverse employment actions in retaliation for complaining about his abuse. Plaintiff's claims fail because employment discrimination claims are not actionable under Title IX.

6

### A. Employment Discrimination Claims Are Not Actionable Under Title IX.

The Society and the School argue that Plaintiff has no private right of action under Title IX because Title VII offers the exclusive remedy for employees of federally-funded employment institutions to assert employment discrimination claims. (Defs' Children's Aid College Prep Charter Sch. and Casey Vier's Mem. of Law in Supp. of their Mot. to Dismiss Pl.'s Am. Compl., ECF No. 41, at 10–13; Def. the Children's Aid Soc.'s Mem. of Law in Supp. of its Mot. to Dismiss the Am. Compl., ECF No. 37. at 8.)

Title IX, in turn, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute applies to a school's disparate provision of programs, aid, benefits, or services or the inequitable application of rules or sanctions on the basis of sex. *See Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 646–47 (1999). It also prohibits a school's deliberate indifference to acts of sexual harassment committed against a student. *Id.*

Neither the Supreme Court nor the Second Circuit have addressed "whether there is a private right of action for employment discrimination under Title IX." *Summa v. Hofstra Univ.*, 708 F.3d 115, 131 (2d Cir. 2013); *see also Bastian v. N. Y. City Dep't of Educ.*, 04 Civ. 7450 (PAC), 2008 WL 2930529, at *6 (S.D.N.Y. July 29, 2008) ("While Title IX includes a private right of action, the Second Circuit has not ruled whether an employee of a federally-funded educational institution can use Title IX to seek redress for employment discrimination on the basis of sex." (citations omitted)); *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 235 (E.D.N.Y. 2010) (same). Other Circuit courts are divided on this question.[2]

---

[2] The First, Fifth, Sixth, and Seventh Circuits have found that there is no private right of action for employment discrimination for employees of federally-funded educational institutions under Title IX. *See Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995) ("Given the availability of a private remedy under Title

Plaintiff argues that the "Supreme Court specifically ruled that Title IX *does* provide a vehicle for Plaintiffs to bring gender-based discrimination claims" in *North Haven Board of Education v. Bell.* (Pl.'s Mem. of Law in Opp'n to Children's Aid College Prep Charter School's Defendants' Mot. to Dismiss the Am. Compl. ("Pl.'s Opp'n"), ECF No. 43, at 11 (citing 456 U.S. 512 (1982)) (emphasis in original).) But in that case, the Supreme Court simply held that the Department of Health, Education and Welfare had the authority to withhold federal funds from schools that discriminated against employees and students of educational programs. *See Bell*, 456 U.S. at 456. "The Court did not address the availability of a private right of action for employees of such programs." *Burrell v. City Univ. of N. Y.*, 995 F. Supp. 398, 408 (S.D.N.Y. 1998).

Plaintiff also cites *Cannon v. University of Chicago* for the proposition that "there is an *implied* private right of action for gender-based discrimination under Title IX." (Pl.'s Opp'n at 12 (citing 441 U.S. 677 (1979)).) It is true that the Supreme Court in that case held that a *student* has a private right of action to sue a federally-funded educational institution for sex-based discrimination in its admissions. *Cannon*, 441 U.S. at 704–09. Nowhere in *Cannon*, however,

---

VII for aggrieved employees, we are unwilling to [find] . . . an implied private right of action for damages under Title IX for employment discrimination. Doing so would disrupt a carefully balanced remedial scheme for redressing employment discrimination by [university] employers . . . ."); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996), *abrogated by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ("Therefore, Title VII preempted any of Waid's claims for equitable relief under § 1983 or Title IX"), *Junior Coll. Dist. of St. Louis Cty., Mo. v. Califano*, 597 F.2d 119, 121 (6th Cir. 1979) ("Such an examination of the plain language of the instant statute, however, indicates no intent to extend its commands so as to include employees of an educational institution in addition to students."); *Islesboro Sch. Comm. v. Califano*, 593 F.2d 424, 428 (1st Cir. 1979) (finding that prohibitions against sex discrimination in employment is "reserved for the amended Title VII and Equal Pay Act.").
The Third and Fourth Circuits have found otherwise. *See Preston v. Com. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994) ("This implied [right of action for enforcement of Title IX] extends to employment discrimination on the basis of gender by educational institutions receiving federal funds."); *Doe v. Mercy Catholic Med. Center*, 850 F.3d 545, 562 (3d Cir. 2017) ("[T]he provision implying Title IX's private cause of action, 20 U.S.C. § 1681(a), encompasses employees, not just students . . . ."); *Kazar v. Slippery Rock Univ. of Penn.*, 679 F. App'x 156, 166 (3d Cir. 2017) (Shwartz, Circuit J., concurring) ("Title IX provides an independent avenue that coexists with Title VII for pursuing claims of gender-based employment discrimination.").

does the Court create a private right of action for an *employee* of a federally-funded educational institution to sue his or her employer for employment discrimination under Title IX.

Plaintiff further relies on inapposite cases preceding *Summa* to argue that "the Second Circuit confirms that 'the Supreme Court has held that Title IX implies a private cause of action which encompasses retaliation against a person because that person has complained of sex discrimination.'" (Pl.'s Opp'n at 12 (citing *Burgess v. Harris Beach PLLC,* 346 F. App'x 658, 660 (2d Cir. 2009)).) *Burgess*, for example, is inapposite because in that case the panel held that a lawyer representing a teacher in an employment discrimination action *does not* have the right to bring a retaliation claim on the lawyer's own behalf under Title IX or the Rehabilitation Act "because she does not have a relationship with any of the defendants that would allow her to invoke the protections of these statutes." *Burgess*, 346 F. App'x at 660. *Weinstock v. Columbia University* simply notes in a footnote that the burden-shifting framework articulated by the Supreme Court for Title VII employment discrimination claims in *McDonnell Douglas Corp. v. Green* also applies to similar claims under Title IX. 224 F.3d 33, 42 n.1 (2d Cir. 2000). *O'Connor v. Davis* and *Murray v. New York University College of Dentistry* involve *students* claiming that they were subjected to sexual harassment in violation of Title IX while volunteering as interns or participating in school-sponsored clinics. *See O'Connor*, 126 F.3d 112, 116–17 (2d Cir. 1997); *Murray*, 57 F.3d 243, 248 (2d Cir. 1995). None of these cases address whether employees of a federally-funded educational institution have a private right of action for employment discrimination under Title IX.

An overwhelming majority of district courts in this Circuit have found that an implied private right of action *does not* exists under Title IX for employees alleging gender discrimination

in the terms and conditions of their employment.[3] The small minority of district courts that have found otherwise argue that the Supreme Court's decisions in *Cannon* and *Bell*, read together, support the proposition that there is an additional *implied* cause of action for employment discrimination under Title IX for employees of educational institutions receiving federal funds. *See e.g.*, *Henschke v. N.Y. Hospital-Cornell Med. Cetr*, 821 F. Supp. 166, 172 (S.D.N.Y. 1993). However, as the Fifth Circuit explained in *Lakoski v. James*, when Title IX was enacted, Congress had recently amended Title VII to remove language exempting its application to educational institutions. *See Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 127–28 (N.D.N.Y. 2001) (citing 66 F.3d 751, 757 (5th Cir. 1995)). Relatedly, Congress omitted language from Title IX that would have amended Title VII in this way.[4] *Id.* This signals that Congress intended Title VII, and not Title IX, to cover employment discrimination claims by employees of educational institutions.

---

[3] *See e.g.*, *Philpott v. New York*, 252 F. Supp. 3d 313, 318–19 (S.D.N.Y. 2017) ("I join many other courts in this district and hold that employment discrimination claims are not actionable under Title IX."); *Uyar v. Seli*, No. 16 Civ. 186, 2017 WL 886934, at *6 (D. Conn. 2017) (dismissing plaintiff's Title IX claim because "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." (citations omitted)); *Carter v. City of Syracuse Sch. Dist.*, No. 10 Civ. 690 (FJS), 2012 WL 930798, at *3–4 (N.D.N.Y. Aug. 8, 2016) (". . . Title VII provides the exclusive means under which a plaintiff may recover for employment discrimination on the basis of sex."); *Summa v. Hofstra Univ.*, No. 08 Civ. 0361 (WDW), 2011 WL 1343058, at *17–18 (E.D.N.Y. Apr. 7, 2011) ("Based upon my review of the applicable case law, I am persuaded that the better argument is to limit an employee's avenue of redress to Title VII."); *Towers v. State Univ. of N.Y. at Stony Brook*, No. 04 Civ. 5243 (FB), 2007 WL 1470152, at *3–4 (E.D.N.Y. May 21, 2007) ("The Court agrees with those courts that have held that Title IX cannot be used to circumvent the remedial scheme of Title VII."); *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97 (D. Conn. 2004) (agreeing with the majority view that "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII"); *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001) ("the court finds that no private right of action exists for employees of federally funded educational institutions who are the victims of employment discrimination."); *Vega v. State Univ. of N. Y. Bd. of Trustees*, 97 Civ. 5767 (DLC), 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) ("This Court agrees with the Fifth Circuit and numerous district courts that have held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex, and limiting money damages under Title IX to student plaintiffs."); *Burrell*, 995 F. Supp. at 408 ("[T]he remedies of Title IX are limited to student plaintiffs, and Title VII is meant to offer the exclusive remedy for employment discrimination based on sex.").

[4] The House Report accompanying the Education Amendments of 1972 explained that "Title VII . . . specifically excludes educational institutions from its terms. The title would remove that exemption and bring those in education under the equal employment provision." H.R. Rep. No. 554, 92d Cong., 1st Sess.

10

Moreover, courts in this circuit have identified two additional compelling reasons why Title VII offers the exclusive remedy for employment discrimination based on sex for employees of federally-funded educational institutions. First, when Congress passed Title VII, it intended it "to provide an *exclusive* avenue of relief except for remedies which were already in existence at its enactment." *Burrell v. City Univ. of N.Y.*, 995 F. Supp. 398, 409–10 (citing *Storey v. Bd. of Regents*, 604 F. Supp. 1200, 1201 (W.D. Wis. 1985) (emphasis added)). Accordingly, courts should not assume that Congress intended to offer additional remedies for employment discrimination under Title IX, which is subsequent to Title VII. *See Vega v. State Univ. of N.Y. Bd. of Trustees*, No. 97 Civ. 5767, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) ("Title IX does not provide a private right of action for employment discrimination plaintiffs because, since Title VII predated Title IX, Congress intended Title VII to provide an exclusive avenue of relief except for remedies already in existence at the time of its enactment.").

More importantly, unlike Title IX, Title VII requires plaintiffs to exhaust administrative remedies with the EEOC before they can sue for employment discrimination in federal court. *See e.g.* 42 U.S.C. § 2000e-5(e)(1) (requiring plaintiffs to file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred"); *see also Summa*, 708 F.3d at 131 ("Title VII provides an administrative procedure by which an individual claiming harassment or retaliation must first pursue administrative remedies before the EEOC prior to seeking judicial relief . . . while Title IX does not." (citations omitted)); *Philpott v. New York*, 252 F.Supp.3d 313, 318 (S.D.N.Y. 2017) ("Title VII imposes an administrative exhaustion requirement that is absent from Title IX."). Therefore, "allowing employees to sue for

---

(1971) *reprinted in* 1972 U.S.C.C.A.N. pp. 2462, 2512. However, the final Title IX bill enacted by both chambers of Congress omitted any language amending Title VII. In the interim, Congress passed "the Equal Employment Opportunity Act of 1972, which removed Title VII's exemption for educational institutions." *See Lakoski*, 66 F.3d at 757.

11

discrimination under Title IX would enable many federal employees to bypass the remedial process that Congress established under Title VII." *Philpott*, 252 F. Supp. 3d at 318–19; *see also Vega*, 2000 WL 381430, at *3 ("To hold that Title IX permits a private right of action for employment-related discrimination would be to offer employees of educational institutions receiving federal funds a mechanism for relief that differs significantly from the avenues available for other employees."); *Burrell*, 995 F. Supp. at 409 ("The concern that Title VII requirements remain intact for employment discrimination claims is persuasive. To hold otherwise would be to create an avenue of relief for employees of federally funded educational institutions which differs significantly from the path afforded to other employees."); *Lakoski*, 66 F.3d at 754 (holding that implying a private right of action for employment discrimination under Title IX "would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers" under Title VII).

Here, Plaintiff is an employee of a federally-funded educational institution attempting to bring quintessential Title VII claims of employment discrimination and workplace sexual harassment under Title IX. Title VII provides the exclusive remedy for such claims, therefore the School's and the Society's motions to dismiss Plaintiff's Title IX claims are GRANTED.

### IV. PLAINTIFF'S STATE LAW CLAIMS ARE DISMISSED

Having dismissed the only claims over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state law and common law claims at this early stage in the litigation. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[T]he exercise of supplemental jurisdiction is left to the discretion of the district court.").

## V.  CONCLUSION

Defendants' motions to dismiss Plaintiff's Title IX claims, ECF Nos. 35 and 39, are GRANTED.  This Court declines to exercise supplemental jurisdiction over Plaintiff's other state and city law claims against any Defendant.  Accordingly, Plaintiff's amended complaint is dismissed in its entirety.  The Clerk of Court is instructed to close the motions.


Dated:  July 29, 2019
      New York, New York

                                                 SO ORDERED.

                                               *George B. Daniels* (signature)
                                               GEORGE B. DANIELS
                                               United States District Judge